## No. 10057.

### W. M. MAYEWSKI VS. HIS CREDITORS.

An opposition to an insolvent's cession and discharge, grounded on a charge of fraud, is in the nature of an answer, and citation to the insolvent is unnecessary.

On the trial of such opposition, the insolvent is a competent witness in his own behalf.

If an insolvent debtor is shown to have committed any "kind of fraud, to the prejudice of his creditors," whether it is specifically denounced in the statute or not, he may be proceeded against, and condemned, under R. S. §1803.

Sections of Revised Statutes, 1803 and 1804, relate to different classes of fraud: one provides for fraud *per se*, and the other for *presumptive* frauds.

While the insolvent law is a highly penal statute, it is not a criminal law, and the charge made against the plaintiff is not a criminal but a civil one. Hence, the court *a qua*, had jurisdiction.

Section 1805 of the Revised Statutes is a valid and constitutional law.

Mayewski vs. His Creditors.

The penalty that is denounced by this statute is not imprisonment for debt: and the statute does not conflict with the act of 1840, which abolished the writ of *ca. sa.*

One State or Government, cannot in virtue of its criminal laws, punish acts committed against the laws of another State; but in a civil proceeding, like the instant one, proof of fraud or theft committed in another State by an insolvent debtor, will sustain a charge of fraud that is made against him in the courts of this State.

Additional and extraneous evidence, not offered on the original trial of the suit, cannot be introduced on the trial of an application for a rehearing, unless it is based wholly or in part, on the ground of it being newly discovered testimony.

To support a charge of fraud under the insolvent law, it is unnecessary that the proof should show that the mass of creditors have been injured by the fraudulent acts of the insolvent debtor, whereby the amount of property applicable to their demands has been reduced. It will suffice, if the proof shows that the insolvent obtained goods under a false and fraudulent pretence from a single individual creditor.

APPEAL from the Civil District Court, for the Parish of Orleans, Monroe, J.

---

*A. J. Lewis* and *Farrar & Kruttschnitt* for Plaintiff and Appellant:

I.

### ON OBJECTION TO JURISDICTION OF THIS COURT.

1. Where an insolvent files a schedule showing debts amounting to over $13,000; and where a creditor, before a creditors' meeting has been held, files an opposition on the grounds of fraud, and praying for a judgment depriving the insolvent of the benefit of the insolvent laws of the State, and sentencing the insolvent to imprisonment; the matter in dispute is the amount of debts on the schedule from which the insolvent seeks a release, and not the amount of the claim of the opposing creditor.

2. The mere fact, that a *proces verbal* of a creditors' meeting, not offered in evidence by either party on the trial of the opposition, is found in the Record, cannot affect either the jurisdiction or the judgment of this court.

3. Whether or not the insolvent was discharged of his debts by that creditors' meeting, is a question open to discussion, but which is not now before your Honors. Most of the votes adverse to discharge are null under the decision in Phillips vs. Her Creditors, 36 Ann. 904, because not properly sworn to. Suffice it for the present to state, that we do not concede that the creditors' meeting has refused the discharge.

### ON THE MERITS.

I.

Delivery to a carrier is, in the absence of contrary evidence, a delivery to the consignee; and goods delivered to a carrier in New York for shipment to a New Orleans merchant, upon representations of solvency made by the latter in New York, are, if such representations be false, obtained under false pretences in New York; and such obtaining under false pretences cannot be made the subject of any penalty, civil or criminal, under the laws of the State of Louisiana. Benjamin on Sales. §804; Angell on Carriers. (5th Ed.) §497: M. I. & P. Ry. Co. vs. Whitesel, 11 Ind. 55; Smith's Mercantile Law (5th Ed.), 590.

II.

The insolvent laws of this State are of a highly penal character, and in construing them we should bear this fact in mind, and apply the canons of construction usually applied to penal and criminal statutes. Simms vs. Bean, 10 Ann. 346.

III.

The acts of fraud, punishable by imprisonment under the insolvent laws of the State of Louisiana, are such acts only as, directly or indirectly, tend to subtract assets from the

mass, and thus to evade the equal distribution of the property of an insolvent contemplated by said laws. A fraud whose purpose or tendency is to add to the mass is not a fraud upon said laws, and not punishable under them. R. S. 1802 to 1805.

IV.

(a) A State cannot, by virtue of its own penal laws, punish acts committed against the laws of another State; a fraud committed in the State of New York, on a citizen of New York, is not punishable by imprisonment under the insolvent laws of Louisiana. Rorer on Inter-State Law, pp. 149 et seq : Graham vs. Monsergh, 22 Vt. 543; Indiana vs. Helmer, 21 Iowa, 370, 372; Richardson vs. Burlington, 33 N. J. 192; Slack vs. Gibbs, 14 Vt. 357.

(b) Montesquieu vs. Heil, 4 La 52, and Andrews vs. His Creditors, 11 La. 464, distinguished and explained.

*Harry H. Hall,* for Defendants and Appellees :

I.

R. S. 1802-3 and 4 authorize the arrest and imprisonment for fraud of an insolvent, even though the fraudulent representations were made in New York. 4 La. 57; Acts of 1840, p. 133; Acts of 1855, p. 435; Rorer Interstate Law, 149, 153; 29 Hun. (N. Y.) 288.

II.

Such proceedings are civil and not criminal in their nature. 4 La. 57, 11 La. 464; 15 La. 337; 4 Ann. 346.

III.

The intention to defraud may be presumed. Wait, Action and Defenses. III. p. 445; 29 Hun. (N. Y.) 426; 15 Sup. Ct. N. Y. 426; R. S 1804.

The opinion of the Court was delivered by

WATKINS, J.    The plaintiff resides in New Orleans, and is an importer and jobber in fancy goods.

On the 11th of November, 1886, he sought the benefit of the insolvent law of the State, on the ground that he was unable to meet his business engagements, on account of his inability to realize on his assets, or collect debts that were due him. His schedules show total assets of $9481 31, and liabilities of $13,479 90.

On the 22d of December, 1886, Emile S. Levi & Co., of the city and State of New York, filed an opposition to the plaintiff's discharge, in which they make a charge of fraud against him, based upon the following state of facts, viz:

That on the 20th of August, 1886, he visited their store with the view of purchasing goods; and upon the faith of his statement that he was worth $8000 over and above his debts and liabilities, they sold him a bill of $557 81, on a credit of thirty days from the 30th of September, provided the said insolvent, upon his return to New Orleans, would send them a written statement of his assets and liabilities, like the one he had made them verbally. This he consented to do. On the faith of his representation and promise they subsequently shipped him the goods. He failed to make them a statement, and they wrote him on

the subject. On the 12th of September he wrote them a letter, inclosing a statement, showing his assets to be $9729 06 and his liabilities $453 40.

On the 4th of November he gave notice to his creditors—opponents among the number—that he was utterly insolvent and could not pay more than twenty cents on the dollar of his indebtedness; and he also submitted to them a statement of his business, as follows, viz:

Assets, $6800 00; liabilities, $13,353 50.

Opponents aver that said indebtedness existed wholly, or in greater part, when the foregoing statement was made to them, and said goods were furnished by them; and that said statement was false, and fraudulent, and was so made by said insolvent wilfully and knowingly, for the purpose of fraudulently obtaining said goods from them, and for the sole purpose of deliberately swindling them of the value of their property.

They aver that these acts of the insolvent constitute a fraud on them within the statute, and that no part of their claim has been paid. They pray for his arrest and confinement until he shall give bond for his appearance and answer; and that he shall be adjudged guilty of fraud, deprived of the benefit of the insolvent law, and that he be sentenced to imprisonment for a term of three years.

To this opposition the insolvent excepted that the charges were too vague and general to justify the decree prayed for, and disclose no cause of action. This exception was overruled, and he filed an answer which embraced the following points, viz:

1st. A general and special denial of the charge of fraud.

2d. That the charge made is essentially a criminal one, and that the court a qua was without jurisdiction to entertain it.

3d. If it is construed to be a civil proceeding then Section 1805 of the Revised Statutes, authorizing it, is unconstitutional and void, being in violation of Articles 2, 5, 6, 7 and 8 of the State Constitution, and the 4th, 5th and 6th Amendments of the Federal Constitution, because, if this proceeding be entertained, he would still be exposed to *another* prosecution before the courts having criminal jurisdiction, and be thereby placed twice in jeopardy for the same alleged offense.

4th. If this be a civil proceeding he is entitled to citation and service of petition.

5th. A claim of $10,000 damages for a malicious prosecution.

On these issues the case was tried by a jury, and they found the plaintiff guilty of fraud. Thereupon the court pronounced judgment

7

against him, decreeing that he be forever deprived of the benefit of the insolvent law of the State, and that he be imprisoned for one year in the Parish Prison.

From this judgment the insolvent has appealed.

### I.

In this Court it is suggested in argument and brief of opponents that the insolvent has no appealable interest, and that his appeal should be dismissed *proprio motu* for want of jurisdiction *ratione materiae*. We are of the opinion that he has sufficient interest in the question of his deprivation *vel non* of the benefit of the State insolvent law to warrant his appeal. But the estate of an insolvent is like that of a deceased person; and the amount to be distributed is over $9000.

### II.

This is not a suit in the ordinary acceptation of that term. The cession of an insolvent is made in conformity to special provisions of the law, to which an opposition is in the nature of an answer. No citation is necessary, because the insolvent is in court on his own petition.

### III.

The evidence introduced by the opponents fully establishes all the averments contained in their petition. There was none introduced by the defendant. For reasons best known to himself, he thought it expedient to remain silent, notwithstanding he had the opportunity to explain his course of dealing with opponents and the disparity between his statement of the 12th of September and that of the 4th of November, 1886, whereby it appears that his assets had been diminished by the sum of $2929, and his liabilities increased by the sum of $11,353.

The argument is made that it is *questionable* whether the insolvent had the right to testify, because the Statute authorized the opponents to require, under certain averments, the *written* answers of the insolvent. But this Statute does not preclude him from testifying, and we think he had that right, and could have exercised it if he had been desirous of so doing.

In his schedule of assets he placed his "stock and fixtures" at $5000, and his "book accounts" at $3354 92—the two aggregating $8,354 92.

If, as stated in the sworn petition which accompanies his schedules, his state of insolvency was brought about through his inability to collect debts that were due him, and to realize on his stock of goods, how can he account for the deficit of $4,998 58? For, if his "book accounts,"

and "stock and fixtures" were converted into *cash*, there would still be a shortage to that extent unaccounted for.

It is evident that opponents furnished the insolvent with $557 81 worth of goods, in the latter part of the month of August, upon the faith of his representations that he was worth $9,729 06 over and above his liabilities, whereas his real situation was such that, two months afterwards, his values—*if counted as cash*—amounted to $4998 58 *less*.

In other words, his representations to opponents were false, or he had sustained losses, in the *interim*, to the extent of $14,727 64.

But neither the petition nor schedules pretend to account for such losses. Had he been possessed of the assets he claimed to have in September, there had been withdrawn at least $4,998.58 prior to the 4th of November, of which he has rendered no account, and offered no explanation whatever. It is provided by R. S., section 1803, that " *every insolvent debtor shall also be considered as guilty of fraud who* shall have passed simulated deeds for the purpose of conveying the whole or part of his property, and depriving his creditors thereof; or who shall have knowingly omitted to declare any of his property, rights or claims in his schedule; or purloined his books or any of them; altered, changed or made them anew, always with an intent to defraud his creditors; or *committed any other kind of fraud to the prejudice of his creditors*."

The plain significance of this statute is, that if an insolent debtor has been proved to have passed simulated deeds for the purpose of depriving his creditors of his property; or to have, knowingly, omitted any of his property from his schedule; or to have " committed any other kind of fraud, to the prejudice of his creditors," he " *shall be considered guilty of fraud*." *Proof* having been made of any fraud on the part of an insolvent debtor, to the prejudice of his creditors, he shall be considered *ipso facto* a fraudulent debtor, and treated as such. In addition, section 1804 of the Revised Statutes provides that if a debtor who has voluntarily surrendered his property to his creditors shall have done either of certain acts therein enumerated, or *"any such act,"* it shall be held " presumptive evidence of fraud;" but this presumption may be rebutted.

These two sections provide for different classes of frauds—one for a class of frauds *per se*, and the other for a class of *presumptive* frauds.

Does the proof bring the plaintiff within the compass of either? Has he committed any kind of fraud to the prejudice of opponents? If one who has passed a simulated title to his property for the purpose of depriving his creditors of it " shall be considered guilty of

fraud;" and one who shall have knowingly omitted to declare any of his property in his schedule "shall be considered guilty of fraud,' why should not the person be so considered who has not only failed to disclose his insolvency, but asserted his solvency to another in order to enable him to buy his goods upon terms of credit? Does not the one act, as well as the other, injure the creditor? Is not the fraudulent purpose and intent just as clearly discernible in one case as in the other? If one is more flagrant than the other, it is the last, because it is through the fraudulent concealment of his insolvency and the false assertion of his solvency that the credit was given and the injury inflicted. That this was the course of plaintiff's conduct is undenied and undeniable.

But counsel for the insolvent strenuously insist that it is not sufficient to prove acts of fraud upon a single individual creditor—i. e., acts by which an *individual* creditor is injured—but that the proof must show that the *mass* of creditors have been injured by the reduction through fraudulent devices of the insolvent debtor of the amount of property applicable to their demands.

His reliance is on the provisions of sections 1802, 1804 and 1808 of the Revised Statutes.

This question was directly presented and decided in *Montesquieu vs. Heil*, 4 La. 52, and from which we make the following extracts, viz:

" To sustain their opposition to the surrender of property and discharge of the insolvent from custody, his opponents rely on the *fraudulent and thieving manner in which he contracted the debt towards them;* and to support the charges of fraud and theft, they introduced in evidence the record of a suit tried in the district court, wherein it appears that they, as plaintiffs, recovered from the present appellant $30,000 as damages, on account of a theft, by him committed, in Paris, in *stealing* from their *ancestor* jewelry to that amount."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Again, " the evident intention of the Legislature, as ascertained by the preamble to act of 1808, is to exclude from its benefits all fraudulent debtors. The 17th section specifies *particular* acts of a debtor, which shall deprive him of the privileges and benefits accorded by the law. Does this specification of frauds preclude allegation and proof of *others*, which would demonstrate the debtor to have been *dishonest in the transactions by which he became indebted to any one of his creditors*, and fix on the former the character of a fraudulent debtor, and, ac-

cording to the preamble, one who has deprived an honest *individual* of the community of his property? We think not.          *          *          *.

" The act now under consideration received a construction by the Supreme Court of the territory of Orleans in 1810, contrary to the claims of the appellant." 1 Martin, O. S. 159. Brown's case.

In the case cited, the insolvent was convicted of fraud and the judgment was affirmed in this court.

A careful examination of Acts 16 and 17 of 1808—and particularly of sections 17 and 19 of the former, and 5 of the latter—will disclose that the causes enumerated therein for the insolvent debtor's deprivation of the benefit of the law are nearly identical with those of R. S. 1802 *et seq.* But those contained in R. S. 1809 add to the list, " also all those whose losses shall have been occasioned by gambling, dissipation and debauch." The decision quoted from seems to meet the objection urged by plaintiff's counsel, under the law as at present in force.

If we were to express an opinion on it, as a new question, we would feel inclined to differ from the views therein expressed; but when we take into consideration the great length of time that that opinion has been suffered to remain undisturbed, we may safely rest our approval of it on the consecrated doctrine of *stare decisis.*

## IV.

Counsel further insist that, while the insolvent law is not a penal statute, yet the charge made against him is a criminal one and, therefore, several consequences result that are distinctive of this proceeding.

Let us first ascertain whether the one preferred is a criminal charge. It is, that Mayewski obtained from opponents goods, on the faith of his false statement that he was solvent.

Now, while at common law, and in some of the States, it is regarded as a false pretense for a person to make a misrepresentation of an *existing condition,* or with regard to the ownership of *specified assets,* on the faith of which credit is given; yet, it is an open question, in England, whether or not it is a false pretense to obtain goods on the representation that a person is a man of means, when, in truth, he is not. 2 Whar. Crim. Law, secs. 1135 to 1138.

Hence, rather a nice question is presented, whether the insolvent's act is cognizable by a criminal court or not. But its decision is not necessary to the determination of this case. We have only to deal with the question in hand. It is quite certain that, while the insolvent law is a highly penal statute, it is not a criminal law; and no charge

under it could be a criminal charge. It is not a good argument to insist that, because the plaintiff *might* be proceeded against under section 813 of the Revised Statutes, for obtaining goods under false pretenses from the opponents, therefore the court *a qua* had no power to determine whether, under section 1807, he had been guilty of fraud upon them or not. If so, then, for a like reason, the argument would be a good one that he could not be criminally prosecuted, because he *might* be proceeded against on a charge of fraud. In this way he might escape both the penalty of one statute and the punishment of the other. We cannot anticipate what *might* be the result of a prosecution of the insolvent in the future. Had he been convicted, and suffered the punishment therefor, and that proceeding been tendered as a bar to the present inquiry, we should have felt constrained to have passed upon the tangible issue thus formulated. At present we cannot.

The conclusion reached on this question necessarily disposes of the plaintiff's exception to the jurisdiction of the court *a qua.*

## V.

Plaintiff's counsel insists that the provisions of section 1805 of the Revised Statutes of 1870 are in conflict with those of articles 2, 5, 6, 7 and 8 of the Constitution of 1879—denominated the "Bill of Rights"— and, therefore, unconstitutional and void.

There is but one essential difference between those articles of the present Constitution and the corresponding articles of the Constitution of 1868, which was in force when the statutes were revised; and that consists in the *proviso* to article 5, which declares that no person shall "be twice put in jeopardy of life or liberty for the same offense," etc. We have already reached the conclusion that the insolvent is not being prosecuted; and it does not appear that he has been prosecuted; consequently, it is manifest that this contention is groundless.

The quoted articles, with slight modifications, have been imported from the 4th, 5th and 6th amendments to the federal Constitution into our own, and the charge of unconstitutionality in that respect is equally groundless.

## VI.

His further contention is that the plaintiff's arrest and confinement in pursuance of the provisions of the insolvent law, would be virtually an imprisonment for debt, and therefore illegal, because it has been abolished.

Under C. P. 210 *et seq,* the arrest of a debtor is permitted while suit

is pending, or until he shall give security for his appearance after judgment.

By the terms of C. P. 726 *et seq*, his imprisonment is permitted after judgment, under certain circumstances; and one of them is to compel him to make a surrender under the insolvent law. These statutes have been held not to conflict with the act of March, 1840, which abolishes the writ of *ca. sa.* Anderson vs. Brinkley, 1 Ann. 126 Thornhill vs. Christmas, 10 R. 543.

For a like reason we cannot perceive in what way section R. S. 1807 conflicts therewith; for it merely provides that when an accusation of fraud is brought against an insolvent debtor who has made a surrender and is found guilty, he shall be deprived of the benefit of the insolvent law and sentenced to imprisonment.

In *Northern Bank of Kentucky vs. Squires*, 8 Ann. 337, it was said that " it seems to be conceded everywhere to be well settled that State insolvent laws, as to contracts posterior thereto, are valid and binding between citizens of the State where such laws exist, with respect to contracts made and to be performed in that State."

It does not lie in the mouth of plaintiff, who is in court on his own petition, seeking the benefit of the insolvent law, to complain of its enforcement against him.

There is no question here as to whether the contract between him and opponents was to be performed in New York or Louisiana, for the reason that the latter have taken judicial cognizance of plaintiffs surrender, and joined issue with him in the courts of this State, and seek therein the enforcement of the insolvent law against him.

We do not regard such imprisonment as being an imprisonment for debt. This law has stood the test of half a century, and, in our opinion, does not conflict with the law abolishing the writ of *ca. sa.*

### VII.

It is next strenuously urged by plaintiff's counsel that if fraud was perpetrated at all, by the insolvent, it was in New York, and that the same is not cognizable by the courts of this State. It is no doubt true, in principle, that one State cannot, in virtue of its criminal laws, punish acts committed against the laws of another State.

But, in the case of Montesquieu vs. Hiel, 4 La. 52, above cited, one of the questions presented was, whether proof of a theft committed in France, would support a charge of fraud made in the courts of this State, against an insolvent debtor who had made a surrender under our insolvent law.

On this question the court said : "As this evidence relates solely to a

civil action, we are unable to perceive the force of the objection made to it, on account of proving a fraud committed in France. It is true that one State or Government will not punish crimes committed in another, by *public prosecution*, but it does not follow, as a necessary consequence, that an offender who flees from the State whence he committed the crime, shall be screened against pursuit by individuals whom he may have injured in the country where he has taken refuge.

"In relation to the civil suit he must be subjected to the laws of the latter place."

That decision is particularly applicable to the instant case, because the fraud complained of was begun in one State and consummated in another.

## VIII.

Objections were urged on behalf of plaintiff to the judge's charge to the jury, but they were not particularly specified, nor set out in a bill of exception, and cannot, therefore, receive any consideration. The request made of the judge to prepare and submit his charge to the jury in writing, came too late, but he did subsequently reduce it to writing and file it in the record, and the demand was substantially complied with.

## IX.

The application for a new trial, substantially embraces the various issues presented in the argument, and it was overruled by the judge *a quo*, after careful consideration; and our study of the case has impressed us with the correctness of his ruling.

On the trial thereof, plaintiff's counsel offered in evidence quite a number of letters and papers, in support of his contention, but same were rejected and disallowed, mainly for the reason that they were not introduced in evidence on the trial of the *case*; and there is no averment to the effect that these papers constituted newly discovered evidence. There is no warrant for such a practice and we approve of the rejection of this evidence.

We do not approve of that part of the judgment of the court *a qua* which taxes the cost against the insolvent personally. It should have been taxed against his estate. In all other respects we think the judgment is corret.

It is therefore ordered, adjudged and decreed that the judgment appealed from be so amended as to tax all cost against the insolvent's estate, and that it be in all other respects affirmed.