## STATE OF LOUISIANA v. CRESCENT CIGAR AND TOBACCO CO.

———

(January 30, 1928.  Opinion and Decree.)
  (March 14, 1928.  Decree Supreme Court, Writ Denied.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Laws—Par. 68, 70.**
The object and purposes of an act should guide in the interpretation of its provisions.

2. **Louisiana Digest—Laws—Par. 70; Taxation—Par. 24.**
The purpose of the Tobacco Tax Act 197 of 1926 was to require all containers of tobacco products to be stamped by the seller before or at the time of sale to a consumer.

3. **Louisiana Digest—Laws—Par. 68, 70, 72; Taxation—Par. 24.**
A sale of an unstamped container to a consumer by a wholesale dealer is a sale at retail and constitutes a violation of the Act.  (Tobacco Tax Act 197 of 1926.)

4. **Louisiana Digest—Laws—Par. 68, 70, 75; Taxation—Par. 24.**
It was not essential that the wholesale dealer should have had knowledge that the purchaser was a consumer and not a retailer.

5. **Louisiana Digest—Laws—Par. 68, 70, 75; Taxation—Par. 24.**
The wholesale dealer should have used reasonable means to ascertain that the purchaser was not a consumer.

Appeal from First City Court, Hon. Val. J. Stentz, Judge.

Action by State of Louisiana against Crescent Cigar and Tobacco Co.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

J. C. Pearce, of New Orleans, attorney for plaintiff, appellant.

Frymire & Ramos, Guion & Upton, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J.    This is a suit to enforce the penalty under the tobacco tax law.

The plaintiff alleged that although the defendant is supposed to be engaged solely in the wholesale business of selling tobacco products, H. C. Comish, an assistant supervisor of public accounts, did, on December 22nd, 1926, go into the place of business of the defendant at 420-422 Poydras street, and purchased at retail 600 cigarettes for the price of $3.54, and also one box of cigars containing 50 five cents cigars for $1.85, and that neither the cigarettes nor the box of cigars had any tobacco tax stamps affixed to them as required by Act 197 of 1926; that the said Comish was not in the business of selling cigarettes or cigars, and purchased them for his own personal use, and therefore defendants had no right to sell them to said Comish unstamped, and that no questions were put to him inquiring whether he was purchasing for resale or for his own personal use; that the above facts constitute a violation of said Act 197 of 1926 by the defendant and a first offense under Section 9 thereof, imposing a penalty of $20;

2nd.    That on December 22nd, 1926, W. A. Cooper, also an assistant supervisor of public accounts, went into the same place of business of the defendants and also purchased from them one box of cigars containing 50 five cents cigars for $1.85, which also did not have any tax stamps affixed thereon; that said Cooper was not in the business of selling cigars, and purchased said cigars for his own use without any questions being asked of him; the sales ticket being made out to cash; that the above facts constitute another violation of the above Act and second offense calling for a penalty of $50 under said Act;

3rd.    That on December 23rd, 1926, the same Cooper again went into defendant's place of business and did buy from them for his own use 50 five cents cigars for $1.85 in a box also unstamped; that this fact constituted a third offense under said Act for which defendants are liable to a penalty of $100;

4th.    That on December 23rd, 1926, the same Comish hereinabove mentioned again went into defendant's place of business and purchased for his own use 400 cigarettes for $2.36, also unstamped; that this fact constitutes a fourth offense for which defendant is liable to a penalty of $100 under the Act.

That the plaintiff is also entitled under the last clause of Section 10 of said Act to such reasonable attorney's fees as the court, in its discretion, may allow and, to $2.50 for the amount of tax stamps which should have been affixed by the defendants upon the cigars and cigarettes sold by them as hereinabove.

Therefore, plaintiff claims judgment for $272.50 and for attorney's fees.

The defendants admitted that they were a corporation doing a wholesale business in tobacco products, admitted the sale on December 22nd of 600 cigarettes for $3.54, also a box of cigars for $1.85, and that no tobacco tax was affixed on either the cigars or the cigarettes; it also admitted the three other sales.    It denied all the other allegations of the petition, and specially denied that the purchasers were Comish or Cooper, or that they purchased said cigars and cigarettes for their personal use, and that they were not in the

retail business; they denied that they did not have the right to sell tobacco products to them; denied that said sales were retail sales, or constituted retail business; they admitted that the purchasers were strangers to them and that no questions were put to them inquiring whether the purchasers were buying for resale or for their personal use; they also admitted that the sale tickets were made out for cash.

There was judgment in favor of defendant dismissing plaintiff's suit.

Plaintiff has appealed.

Comish and Cooper, sworn as witnesses, both corroborate the allegations of the petition concerning their official position, the purchase of the cigars and cigarettes by them from defendants for their personal use, the absence of any stamps on the cigars or cigarettes, and the absence of any questions put to them as to whether they were retail dealers. They also testified that at the time they were buying there were various other people there buying tobacco, among them motormen and conductors of the Public Service. Comish testified that he went to the store of defendant; that he walked to the window and told the gentleman he wanted three cartons of Chesterfield cigarettes and a box of El Trelles cigars and the man he spoke to wrote an invoice, kept the duplicate, and gave him the original and said: "Go up to the counter and get your tobacco," and he went to the man, paid him, and walked out with the merchandise; the cigarettes were in small cartons, ten packages to the carton, 200 Chesterfields to each carton; the mode of procedure was as follows:

He walked in the door and there is an open window there, and a gentleman sitting at the desk; he asked for 400 Chesterfields, and handed in the money for them, and the gentleman handed him the two bills, original and duplicate, and he carried them both to the counter, and the person who puts up the packages keeps the duplicate and gives him the original and the tobacco; employees of the department have gone back and talked to people there, and told them they were representing the State and asked if they could buy tobacco and they were refused. On cross-examination the witness testified:

"Q. What did you think when you got this statement with the notation: 'These goods bought for resale purposes,' what did you think that meant?

"A. I didn't pay any attention to that until I had gotten outside.

"Q. What did you think of it after you got on the outside and saw it?

"A. I read what was on there and noticed my other slip on the next day and it didn't have that on it.

"Q. Did you place any construction on this at all?

"A. No, sir.

"Q. Didn't it occur to you that if the Crescent Cigar and Tobacco Company had written on a bill of goods: 'These goods were sold for retail purposes only,' you couldn't use them for any other purpose?

"A. I knew there was no question asked as to that.

"Q. I asked you when you got this bill in box car letters: 'These goods bought for resale purposes,' what did you understand that to mean?

"A. I noticed that after I had gotten out of the store.

"Q. Well, after you saw it, what impression did that make on you?

"A. It was just merely a rubber stamp placed on there, because no questions were asked me.

"Q. Well, when you received the one on your next purchase, on the 23rd, with-

out the rubber stamp on it, you didn't consider that was significant?

"A.  I thought that was perhaps an oversight that the rubber stamp was not put on it."

The witness further testified that he paid for the fifty cigars $1.88 a box less two per cent discount the regular wholesale price in the original package; and that those cigars sell at retail 'five cents a piece; he has had reports that he could buy those cigars at defendant's store, time after time, even when they knew that they were for the personal use of the purchaser.

Cooper's testimony was practically the same as that of Comish.

J. S. DeBen, vice-president and manager of the defendant company, admitted that the company had made the sale set forth in the petition.  He testified that "we don't sell to consumers"; they have a sign in their store stating that they are "wholesalers only"; on one occasion a purchaser was asked whether he was purchasing for resale or for his own account, and when he answered that he was purchasing for himself the goods were taken away from him and the price paid refunded to him; he knows of no other case besides the ones sued for in which purchasers have bought for their own use; about 2500 retailers in the city buy in his store; it is not unusual for a dealer to buy one carton of cigarettes; prior to the tobacco tax law it was not his habit to ask a purchaser where his place of business was and whether he was a retailer; now they ask everybody who comes in, if they do not know him, whether they are retailers or not; there are 20 cigarettes to a package and ten packages to a carton, and fifty cartons to a container shipped from the factory; it is unusual for a retailer to buy the latter; his business is conducted now in the same manner in which it was prior to the tobacco tax law; since the tobacco tax law went into effect he has given orders to his employees "to be careful to sell only to dealers and try not to let anyone come in and buy goods unless they know them or had reason to believe they were dealers"; he discussed this matter with his attorney and the result was that he purchased a rubber stamp to be placed on his goods; the stamp bore the words: "These goods bought for resale purposes," and was placed on their invoices "to show that the goods were sold to them as dealers and not to be consumed"; their employees had instructions to use those stamps, and as far as he knew they followed those instructions; their policy is not to sell to consumers as it would affect their business with retail dealers; he is not personally acquainted with all his customers nor familiar with their names; whenever a sale is made a slip is made out and kept as was done in this case; out of the four purchases sued upon herein there is only one slip bearing the impression of the rubber stamp; he does not know whether his clerks followed his instructions relative to sales to people they did not know; a stranger could purchase cigars or cigarettes unless they had reason to believe that he was a consumer; if they had reason to believe that he was not a dealer they would not sell to him; their instructions are, when a new customer comes in, to obtain his name and address, sometimes these instructions are not carried out; they make no effort to sell to consumers nor do they want to sell to them.

A. L. Rau, the president of defendant company, testified that he has charge of the financial department; that they do a yearly business of a little less than $2,000,000 strictly wholesale.

Henry R. Eiermann is in charge of the city billing desk where they make all sales; the meaning of the words on the invoices, "These goods bought for resale purposes", is that they sell only to people who resell the goods; these words are put on by a rubber stamp; this stamp is used on all their invoices; the majority of sales are one, two or three cartons of cigarettes, and one, two boxes of cigars; only great big retailers like Worner's Pharmacy buy 50 carton packages; there is a sign just as you go in that "we sell wholesale only," in the majority of sales deliveries are made by trucks; "but since we have a "cash and carry" department we do quite a lot of business over the counter with a discount of eight per cent for cash in cigarettes; employees were instructed by the managers of the Company not to sell to consumers; he does not know all the customers that come into the place, but he knows most of them; when a person comes in to buy they "ask if its for resale purposes"; they have always had those instructions, even before the tobacco tax law; he knows one of the clerks who made the sales in this case but he would not say that he was familiar with the instructions; in the rush of business around Christmas they employ extra clerks.

J. D. Atkinson is secretary and treasurer of the defendant Company; the words on the slips: "These goods bought for resale purposes," mean what they say; they are put on with a rubber stamp; it was bought for use in connection with this tax law, just prior to October, 1926; as far as they are concerned everything is sold for resale; during holidays they increase the number of their sales clerks beyond two or three; motormen, conductors, policemen, firemen, white and black people come in and buy for retailers or for their wives who are in business; 50 to 75 per cent of their business is done in small quantities, such as the plaintiff's witnesses purchased; the words on the rubber stamps mean that they "are selling these goods for resale purposes".

The four invoices or slips delivered by defendants to plaintiff to represent their purchase are filed in the record; one of them bears the rubber stamp mark: "These goods bought for resale purposes"; the other three are without it. On the top left hand corner all the bills carry the following printed words: "Wholesale only". In the advertisement of defendants' business in the Times-Picayune of January 12th, 1927, are the following words: "10% for cash on Cigarettes in case lots or 8% for cash on any quantity; Tobacco and cigarettes assorted as desired 'cash and carry'." Nothing is said about wholesale, or retail, or consumers.

The tobacco tax Act No. 197, 1926, p. 322, reads as follows:

"An Act to levy a tax upon retail dealers in all forms of tobacco and tobacco products for the benefit of the public schools of the State of Louisiana, based upon the weight, or the sale price at retail; to provide for the collection of such tax and to require the use of stamps as evidence of the payment thereof to provide for an inspection of the records and stocks of all dealers subject to the payment of this tax, and prescribing penalties for the violation of this act.

"Section 1. That there is hereby levied a tax in the sum as hereinafter set forth upon tobacco, and tobacco products as defined in Section 2 of this Act for the benefit of the public schools of the State of Louisiana, which tax shall be paid and collected as set forth herein, from every person, firm, corporation, association of persons engaged in selling any or all such forms and kinds of tobacco, tobacco products and tobacco substitutes at retail.

"Section 2. The tax herein levied and to be collected on all kinds of tobacco and tobacco substitutes provided for in this

Act shall be one cent for each ten cents or fractional part thereof of the retail selling price of all cigarettes, smoking, and chewing tobacco, cigars, cheroots and snuff made of tobacco or any substitute thereof.

"Section 3. The payment of the tax as imposed in this Act on articles based on retail selling price shall be evidenced by affixing stamps in the manner and at the time as herein set out. In the case of cigars and plug chewing tobacco, the stamps must be affixed to the box or container in which or from which normally sold as soon as received into retail place of business. In case of cigarettes, snuff, smoking and chewing tobacco, wrapped in packages, the stamps must be affixed to each individual package as soon as received into retail place of business. Stamps required to be affixed by the provisions of this Act shall be affixed in such manner that their removal will require continued application of steam or water. The stamps affixed to boxes containing cigars or chewing tobacco shall be cancelled by placing thereon the date of such affixing.

"Section 9. Any person, firm, corporation, or association of persons required to pay taxes under the provisions of this Act, who shall fail to affix stamps properly, or to cancel such stamps after affixed as are required to be cancelled, or who shall fail or refuse to permit the Supervisor of Public Accounts or his authorized agent or representative to examine and inspect taxable stocks of merchandise, invoices, books, papers, and memoranda deemed necessary to secure information directly concerned in the enforcement of this Act, shall suffer a penalty of Twenty dollars for the first offense, $50 or the second offense, $100 for each offense thereafter, the said penalties to be collected by civil process as hereinafter provided."

The Tobacco Tax Act does not define what it means by the word "retail dealer".

But previous Acts have done so, and also our Supreme Court, Section 6 of Act 171 of 1898, p. 394, gives the following definition:

"No person or persons shall be deemed wholesale dealers unless he or they sell by the original or unbroken package or barrel only; and provided, further, that no person or persons shall be deemed wholesale dealers unless he or they sell to dealers for resale. If they sell in less quantities, than original and unbroken packages or barrels, they shall be considered retail dealers and pay licenses as such."

Section 8 of Act 233 of 1920, p. 403 and Sec. 7 of Act 205 of 1924, p. 333 repeat the same definition in ipsissimis verbis.

In State vs. Spencer, 127 La. 336, 53 South. 596, the Court said:

"Under the general license Act No. 171 of 1898, p. 387, no person is deemed a wholesale dealer unless he sells to dealers for resale. Hence a dealer in intoxicating liquors who sells to individuals for consumption is a retailer and may be properly convicted as such in a prohibition parish."

The editorial staff added the following definition from Words and Phrases Vo. Wholesale.

"The primary and usual meaning of the word 'wholesale' is the sale of goods in gross to retailers who sell to consumers."

This definition is also adopted by the court, quoting 30 A. and E. E. L., p. 518, and Black, who says:

"In reason, however, and upon a right use of language, the distinction between wholesale and retail, in the absence of statutory definitions, should be made to depend not solely on the quantity sold, but also upon the purpose of the sale and the character of the purchaser."

And the Court adds:

"It follows that every dealer is a retailer who is not within the definition of wholesaler."

When the meaning of a word has been defined by a statute and by decisions of

the courts, and the legislature in a subsequent statute repeats that work, the presumption will arise that the legislature used it with the same meaning and definition. 1 H. D. 787, No. 18; State vs. Olympic Club, 47 La. Ann. 1095, 17 So. 599; Maylwski vs. Creditors, 40 La. Ann. 94, 4 So. 9; State vs. Glandi, 43 La. Ann. 914, 9 So. 925; Succession of Rixner, 48 La. Ann. 552, 19 So. 597.

Therefore, we must assume that when the legislature used the word "retail dealer" in Act 197 of 1924, it intended to use it with the meaning given to it by the Acts of 1898, 1920, and 1924, and by the courts, that is one who sells directly to the consumer in contradistinction of a wholesale dealer who sells to dealers for resale. This is no strained construction. The record reeks with the proof that the defendants so understood the Act. Their president, their vice-president, and their secretary, themselves have defined' the word "wholesaler" when they testify that they do not sell to consumers, that they sell only to those who resell. Their president testified that "they did not sell to consumers," meaning that it was not their business so to do. In this testimony he is corroborated by all the other officers who have testified. The testimony is that after consulting their attorneys they adopted a rubber stamp, to impress upon each invoice the words: "These goods bought for resale purposes." They also testify that instructions were given to the employees not to sell directly to consumers. This Court adopts the interpretation given to the act by the defendants themselves and are of the opinion that a sale made by the defendants to a purchaser not for resale purposes but for consumption by the purchaser was a sale by retail and constituted a violation of the Act unless the tobacco was stamped at the time of the sale. The learned trial judge has quoted several authorities to establish that defendants were not retail dealers and did not commit an act that constituted them as such by making the four sales for which they are sued. Those authorities are no doubt correct in so far as they interpreted the revenue acts for the purposes of determining the character of the defendants in those cases in relation to the license Acts and the sum each was to pay as wholesale or retail dealers. But these decisions are foreign to the question before us. The question in those cases was the character of the business carried on and the amount thereof as a basis for the license. The question in this case is whether the defendants have violated a statute which imposes a penalty for selling tobacco to a consumer without proper stamps. It is immaterial whether the defendants are wholesale or retail dealers. The offense consists in selling unstamped tobacco to a consumer.

It will not be contended that it is a violation of the law for a retail dealer alone to sell unstamped tobacco to a consumer, but a legitimate act on the part of a wholesale dealer. Such a construction would defeat the law.

In construing a statute the object and purposes of the legislature should be considered. Charity Hospital vs. Cyril Meyeaux, No. 11,039, recently decided by this court. State vs. Olympic Club, 47 La. Ann. 1095. The purpose and only purpose of the Tobacco Tax Act was to require all containers of tobacco to be stamped by the seller before or at the time of the sale to the consumer.

In the case of State vs. McCrystol, 43 A. 907, a "tales juror" was held to be included in a law punishing the attempt to bribe a "grand juror or petit juror". Such was the clear intention of the statute. "It would attribute fatuity to the legislature," said the court, "to suppose that it would

punish the bribery of one class and not of the other." Also State vs. Winehill & Rosenthal, 147 La. 792, 86 South. 181. So in this case it would be absurd to suppose that it would be an offense for a retail dealer to sell unstamped tobacco to a consumer, but not an offense for a wholesale dealer to do so.

It was immaterial whether the seller called himself a wholesale and not a retail dealer. His act of selling to a consumer was one of a retail dealer, and was a violation of the statute, and by violating the statute once the wholesale dealer became a retail dealer, pro hac vice, and made himself amenable to the law. The defendants contend that it is the character of the business that determines the liability. The act is personal. It says in Sec. 99: "any person, firm, corporation, or association of persons required to pay taxes under the provisions of this Act who shall fail to affix stamps shall suffer a penalty, etc."

It is not necessary that the defendants should be in the business of violating the law; one act is sufficient. We must read the whole Act, and not only one clause.

It is also contended that there must be a continuity of the illegal sale to constitute the offense. This cannot be so, inasmuch as the law punishes a first, a second, and a third offense by increasing penalties. We are of the opinion that a single violation of the law is sufficient to incur the penalty.

It has been argued that the State must show that the defendants had knowledge that the purchases were by consumers and were not being made for resale. The statute does not specifically require proof of that knowledge, and courts cannot add to the law.

Whenever knowledge on the part of the defendant in a criminal prosecution must be shown, the statute creating the offense, specifically requires it. Such is the statute making it an offense to overdraw one's bank account (and many other criminal statutes. It would be impossible in many cases for the State to make such proof. But it would be easy for the seller of tobacco products to have or to acquire that knowledge. In many instances the seller knows his customers for resale. From those whom he does not know, it is no unreasonable requirement that he make inquiry of them. The defendants themselves have testified that they inquire from purchasers whom they do not know as resalers.

The impression made by the rubber stamp upon the invoices is no protection to the defendants. The proof is that it was applied only once out of four purchases, and is not binding upon purchasers. No proof is made that the purchaser's attention is called to it. It was not in this case. Besides the purchaser may well ignore it. He commits no offense in purchasing or carrying away unstamped cigars; his interests will prompt him to keep silent, as he buys at a cheaper price. The seller is the one committing the offense. It is also to his interest not to enlighten a purchaser and thus lose a sale. The innocent seller in good faith who had taken means to avoid a violation of the law would be entitled to more consideration than the defendants here who appear to have neglected reasonable means of protecting themselves against violation of the law.

We are, therefore, of the opinion that a dealer, whether he is a wholesaler or retailer, who sells tobacco products to a consumer without affixing upon them the stamps required by the law is guilty of a violation thereof and amenable to the penalty imposed by that law.

But while we are of the opinion that each sale made by the defendants was a violation of the law, we do not believe than the State can recover more than the penalty for the first offense.

Section 10, on page 325 of the Act contains the following provision:

"Whenever it shall appear to the Supervisors of Public Accounts that any such person, firm, or corporation, or association of persons engaged in the retail sale of tobacco and tobacco products, as described in this Act has failed to affix stamps or cancel stamps as provided herein, the Supervisor of Public Accounts shall compute the correct amount of the tax due and so certify same as being the amount actually due and owing and shall state in what way this Act is violated, and he shall concurrently notify such person, firm, corporation, or association of persons of such facts, and in the event that such person, firm, or corporation, or association of persons shall not, within five days after such notification, pay the amount of tax found to be due and owing and affix stamps to taxable merchandise and cancel the same as provided in this Act, the Supervisors of Public Accounts shall, in the name of the State, without deposit or advance cost, enter suit against such person, firm, corporation, or association of persons for the amount due and owing, together with such penalties as are provided in this Act or for the amount of such penalties alone."

We are of the opinion that when information of the violation of the Act was brought home to the Supervisor of Public Accounts on the occasion of the first violation on December 22nd, 1926, it was his duty to have given the defendant the notice required by the above clauses, and that he could not have proceeded against the defendants for further violations without having given this notice.

It is, therefore, ordered that the judgment herein be reversed and annulled, and it is now ordered that the defend-ants, the Crescent Cigar and Tobacco Company, be condemned to pay to the plaintiff the sum of Twenty-two 50/100 dollars, with fifty dollars for attorney's fees and all costs of suit.